

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

November 3, 2025

**BY ECF**
The Honorable Philip M. Halpern
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:     *United States v. Travis Sinclair*, Nos. 23 Cr. 503 & 25 Civ. 7015 (PMH)

Dear Judge Halpern:

The Government respectfully submits this opposition to defendant Travis Sinclair's *pro se* motion pursuant to 28 U.S.C. § 2255 challenging his 144-month sentence for the commission of a violent Hobbs Act robbery during which he brandished and discharged a firearm, on the grounds that the Court made various purported errors at sentencing and that his counsel was constitutionally ineffective. Sinclair's motion, to the extent it raises claims of sentencing error, is barred by the collateral attack waiver contained in his plea agreement and the doctrine of procedural default. Sinclair's ineffective assistance of counsel claim, although carved out of the collateral attack waiver, is meritless and should be denied on that basis.

## BACKGROUND

### A. Sinclair's Prior Federal Convictions

In 2022, Sinclair pled guilty to Information 19 Cr. 137, charging him with, as relevant here, 12 armed robberies, during nine of which firearms were brandished and during two of which firearms were discharged, in violation of 18 U.S.C. § 924(c). In addition, Sinclair pled guilty to the armed carjacking of a suspected drug dealer; distribution of 129 kilograms of marijuana; stealing a kilogram of heroin and an ounce of cocaine; transporting crack; obtaining 100 ecstasy pills of which 50 were distributed; stealing his girlfriend's credit card and trying to steal $5,000; using counterfeit currency to pay rent; lying on a U.S. visa application; and possessing marijuana while in custody. Presentence Investigation Report ("PSR") ¶ 36. When Sinclair committed these offenses, he was in the United States illegally, having come here from Jamaica in 2015 on a visa procured by fraud. PSR ¶¶ 36, 55.

On July 27, 2022, Judge Karas sentenced Sinclair to 48 months' imprisonment and five years' supervised release. PSR ¶ 36. Sinclair, who had been in federal custody since his arrest in 2018, was released from prison and began his term of supervised release that same day. PSR ¶ 36.

## B.  The Instant Offense Conduct

On November 3, 2022, less than *four months* after beginning his term of supervised release, Sinclair participated in an armed robbery of two employees ("Victim-1" and "Victim-2") of an auto body shop (the "Body Shop") in Mount Vernon.  PSR ¶¶ 10-11.  Sinclair committed the armed robbery with the assistance of two co-conspirators—Kentley Thomas and Howrontz Mattis.

On the day of the robbery, Thomas encountered Victim-2—with whom he had a preexisting dispute—at the Body Shop, and the pair proceeded to have a verbal altercation. Thomas then left the Body Shop and called Sinclair and Mattis.  Shortly thereafter, Thomas, along with Sinclair and Mattis, went back to the Body Shop.

As reflected in surveillance footage of the incident, when the three men went to the Body Shop, Thomas immediately began assaulting Victim-2.  As Thomas assaulted Victim-2, Sinclair pulled out a loaded, tan semiautomatic handgun, and he pointed it directly at the crowd assembled in front of the Body Shop.  PSR ¶¶ 11, 15.  As Thomas continued to assault Victim-2, Sinclair pointed the gun at different people in the crowd, waved the gun in the air, and then pulled back the slide of the gun to put a bullet in the chamber and make it ready to fire.

While controlling the crowd, Sinclair observed that Victim-1, the owner of the Body Shop, was standing by himself off to the side on the corner of the street.  Sinclair approached Victim-1, pointed the gun at him, and took a bag ("Bag-1") from him at gunpoint.  Sinclair then corralled Victim-1 back towards the group assembled in front of the Body Shop.  As this occurred, Thomas continued to assault Victim-2 and, at a certain point, began trying to take a bag ("Bag-2") from Victim-2.  As Victim-2 resisted, Sinclair—who had by this point returned with Victim-1—struck Victim-2 on the head.  Thomas then continued to attempt to wrest Bag-2 from Victim-2, and, as they struggled, Mattis came over and assisted Thomas in completing the robbery.  At this point, Mattis (holding Bag-2), Thomas, and Sinclair (holding Bag-1) all fled together.  As they were fleeing, Sinclair fired multiple shots in the air.  PSR ¶¶ 11, 14-17.

Sinclair, Thomas, and Mattis were located by law enforcement shortly after the robbery. When law enforcement approached, Sinclair attempted to run—he jumped over a fence into the backyard of a private residence and attempted to discard the gun—but was quickly apprehended, and the gun was recovered from an area near where Sinclair was arrested.  Thomas and Mattis were apprehended without incident.  Bag-1 and Bag-2 were recovered at the time of the arrest. Bag-1 (which Sinclair took from Victim-1) contained approximately $9,500 in cash, which represented proceeds from the Body Shop, and Bag-2 (which Thomas and Mattis took from Victim-2) contained a BB gun, among other things.  PSR ¶ 18.

## C.  Sinclair Pleads Guilty to Hobbs Act Robbery

On November 4, 2022, Sinclair was charged by complaint with Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951, and discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).  Dkt. 1.  Notably, because Sinclair had prior convictions for violations of Section 924(c), the Section 924(c) charge in the complaint carried an enhanced 25-year mandatory minimum sentence of imprisonment.  *See* 18 U.S.C. § 924(c)(1)(C) ("In the case of a violation of this

subsection that occurs after a prior conviction under this subsection has become final, the person shall ... be sentenced to a term of imprisonment of not less than 25 years[.]").

On October 2, 2023, Sinclair waived prosecution by indictment and consented to the filing of a one-count information (the "Information") charging him with Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2.  Dkt. 60, 64; PSR ¶ 1.

On November 29, 2023, Sinclair pled guilty, pursuant to a plea agreement with the Government (the "Plea Agreement"), to Count One of the Information.  *See* PSR ¶ 4.  In the Plea Agreement, the parties calculated the applicable Guidelines range for the Hobbs Act robbery to be 57 to 71 months' imprisonment.  *See* Plea Agmt. 2-3.  The parties further agreed, however, to recommend an upward variance to the Court—specifically, a sentence in the range of 12 to 15 years' imprisonment.  *Id.* at 3 ("Notwithstanding the Guidelines calculation stated above, the parties agree not to seek a sentence outside the range of 12 to 15 years' imprisonment (the 'Stipulated Sentencing Range') or suggest in any way that the Probation Office or the Court consider a sentence outside the Stipulated Sentencing Range of 12 to 15 years' imprisonment.").  Significantly, in exchange for Sinclair's guilty plea pursuant to the Plea Agreement, the Government agreed not to prosecute Sinclair for a violation of Section 924(c), which, as noted, would have carried with it a 25-year mandatory minimum consecutive sentence.  Further, as part of the Plea Agreement, Sinclair agreed not to appeal or bring a collateral challenge "of any sentence within or below the Stipulated Sentencing Range of 12 to 15 years' imprisonment," although Sinclair reserved "whatever rights [he] may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise."  *Id.* at 4-5.

Before accepting Sinclair's guilty plea, the Government put on the record that, in view of the 25-year mandatory minimum consecutive sentence that a second Section 924(c) conviction would carry, the parties had negotiated and agreed in the Plea Agreement to seek an above-Guidelines sentence within the range of 12-15 years' imprisonment:

> The Defendant, as reflected in the criminal history section, has a prior conviction for a violation of 924(c). As a result, were he to be charged again with a 924(c), he would face a mandatory minimum sentence of 25 years' imprisonment. As you can see, the Government has elected not to proceed with a 924(c), and as a result of the negotiated resolution, what we've done is, we've agreed to a resolution just to Hobbs Act robbery, which carries no mandatory minimum. But the parties have also agreed to an Option A agreement whereby they agree not to advocate for any sentence outside of 12 to 15 years.
>
> So, it will be substantially below the sentence that the Defendant will be facing were we to go forward with a 924(c), but it is above the Guidelines range.

Plea Tr. at 3.  The Government also noted that this agreement was "nonbinding" on the Court, but would constrain defense counsel to seeking "a sentence of 12 years," while affording the defendant "the benefit [of] … not facing a mandatory minimum sentence of 25 years."  *Id.* at 3-4.

After placing Sinclair under oath, the Court conducted a careful allocution that complied with Federal Rule of Criminal Procedure 11.  Plea Tr. at 7-11.  The Court confirmed that Sinclair

had discussed the charge against him, any possible defenses, and the consequences of pleading guilty with his attorney, and that Sinclair was satisfied with his attorney's representation. *Id.*

The Court also established that Sinclair understood the rights he was giving up by pleading guilty, including his rights: (a) to persist in his previously entered plea of not guilty; (b) to a speedy and public jury trial where he would be presumed innocent and the Government would bear the burden of proving his guilt beyond a reasonable doubt; (c) to the assistance of counsel, including court-appointed counsel if necessary, at trial and at every other stage of the proceedings; (d) to confront and cross-examine witnesses; (e) to testify, obtain and present evidence, and compel the attendance of witnesses; (f) against compelled self-incrimination; and (g) to appeal a trial conviction. Plea Tr. at 11-14. Sinclair stated that he understood those rights and was willing to waive those rights by pleading guilty. *Id.* at 13-14.

The Court also reviewed the charge against Sinclair, confirmed that Sinclair understood the nature of the crime to which he was pleading guilty, set forth the elements of the offense, and advised Sinclair of the maximum and minimum penalties he would face as a result of his guilty plea. Plea Tr. at 14-19. The Court confirmed that Sinclair understood that the Court had an independent obligation to calculate the applicable Guidelines, that the Court would not be able to calculate the applicable Guidelines range until after the presentence report had been prepared, and that the sentence would be solely in the District Court's discretion based on the Guidelines and statutory factors. *Id.* at 19-21. Sinclair confirmed his understanding that he would not be able to withdraw his guilty plea if the sentence imposed differed from what he expected or what his attorney or anyone else predicted. *Id.* at 21.

The Court confirmed that Sinclair understood and signed the Plea Agreement after reviewing it with his attorney. Plea Tr. at 22-23. The Court also confirmed that Sinclair was pleading guilty voluntarily and of his own free will, and that his guilty plea was not the result of threats or force. *Id.* at 23-24. The Court further confirmed that nobody had induced Sinclair to plead guilty through any promises outside the Plea Agreement. *Id.* at 23-24.

The Court then confirmed that Sinclair understood he was waiving his right to appeal or collaterally challenge a sentence within the limits set forth in the Plea Agreement:

> THE COURT: Do you also understand that, under certain circumstances, you have the right to appeal any sentence that I might impose subject, of course, to the terms and conditions of this Plea Agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that under the Plea Agreement you're giving up your right to appeal or otherwise challenge your sentence so long as I sentence you at or below the stipulated sentencing range of 12 to 15 years of imprisonment?
>
> THE DEFENDANT: Yes, Your Honor.

Plea Tr. at 25.

Notably, the Court also specifically confirmed that Sinclair understood that he was agreeing to seek an above-Guidelines sentence of at least 12 years' imprisonment:

THE COURT: Mr. Sinclair, as you heard earlier today, not only have you agreed to a Guidelines range [of 57 to 71 months' imprisonment], but you've also agreed to a sentencing range. Do you understand that you have agreed to a sentencing range of between 12 and 15 years of imprisonment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that your lawyer will not suggest or in any way ask the Court to consider a sentence outside that stipulated sentencing range of 12 to 15 years of imprisonment?

THE DEFENDANT: Yes, Your Honor.

Plea Tr. at 27-28.

The Court ensured that an adequate factual basis supported Sinclair's plea, asking Sinclair to describe in his own words what he did that made him guilty. Plea Tr. at 29-31. The Court found that Sinclair was competent, that Sinclair understood his rights, and that Sinclair's plea was knowing, voluntary, and supported by a sufficient factual basis. Accordingly, the Court accepted Sinclair's guilty plea. *Id.* at 32-33.

### D. Sinclair's Sentencing

In advance of sentencing, the Probation Office issued the Presentence Report, which calculated the applicable Guidelines range in the same manner as the parties in the Plea Agreement. Specifically, the Probation Office calculated the applicable Guidelines range as follows: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20. PSR ¶ 25. Pursuant to U.S.S.G. § 2B3.1(b)(2)(A), seven levels are added because a firearm was discharged in the commission of the offense. PSR ¶ 26. A three-level decrease for acceptance of responsibility is warranted pursuant to U.S.S.G. § 3E1.1. PSR ¶¶ 32-33. Therefore, the total offense level is 24. PSR ¶ 34. The Probation Office further calculated three criminal history points, putting Sinclair in criminal history category II. PSR ¶ 39. A total offense level of 24 and criminal history category II yields an advisory Guidelines range of 57 to 71 months' imprisonment. The Probation Office then recommended a sentence of 144 months' imprisonment.

The parties also submitted sentencing submissions. Consistent with the Plea Agreement, in his sentencing submission, Sinclair requested a sentence of 12 years' imprisonment. Dkt. 73. In its sentencing submission, the Government requested a sentence of 15 years' imprisonment, based primarily on the nature and circumstances of the offense, which involved a violent gun-point robbery in which Sinclair discharged a firearm; the history and characteristics of the defendant, which included a serious criminal history and a near-immediate return to crime after release from his last term of imprisonment; the need to promote respect for the rule of law, given Sinclair's apparent disregard for the law; and the need to promote general and specific deterrence. Gov't Sent. Subm. (Sept. 16, 2024).

On December 12, 2024, Sinclair appeared for sentencing. During the proceeding, both the Court and the parties discussed, in depth, the parties' agreement, in the Plea Agreement, to request

a sentence on the Hobbs Act count within the range of 12 to 15 years' imprisonment.[1]  As the Court explained, while it did not wish to delve into the parties' plea negotiations, it presumed, based on the Government's decision "not … to charge [Sinclair] with his second 924(c) gun charge," which carried a "mandatory minimum consecutive sentence … [of] 25 years," that "both sides … think that would be too much prison time.  And, so, rather than do that, the parties – notwithstanding the criminal history and offense level of 24 and Criminal History II, … agree[d] with one to the other that they will seek a sentence between 12 and 15 years of imprisonment, and … the hope is that the Court will go along with that premise."  Sent. Tr. at 27.

Consistent with the plea proceedings, both parties confirmed that this was, in fact, the basis for this provision in the Plea Agreement.  As the Government explained, the parties had agreed to "what's known colloquially as an Option A agreement, where the parties agree that they can't argue for a sentence outside of a specified range"—here, 12 to 15 years' imprisonment.  Sent. Tr. at 28.  Because Sinclair had prior convictions for violation of Section 924(c), the Government explained, an additional conviction "would carry with it a mandatory minimum consecutive sentence of 25 years' imprisonment."  *Id.* at 28.  While the robbery was "caught on video" and the "evidence was quite strong," the parties, as part of plea negotiations, discussed "an appropriate resolution from [their] perspective" and "fashioned an Option A agreement" that took Sinclair "outside of the mandatory minimum."  *Id.* at 28-29.  From the Government's perspective, it was "giving [Sinclair] a significant break" by avoiding a mandatory minimum 25-year consecutive term.  *Id.* at 29.  In exchange, while Sinclair would not face a mandatory minimum, "both parties" would ask the Court "for an upward variance"—specifically, to impose a sentence within the range of 12 to 15 years on Count One.  *Id.* at 29-30.

Defense counsel likewise confirmed Sinclair's agreement with the Government.  The Court asked defense counsel to confirm whether the parties had "both agreed, in effect, that you want [the Court] to sentence [Sinclair] between 12 years and 15 years on the criminal charge Hobbs Act robbery, because that's part of your agreement with the Government."  Sent. Tr. at 35-36.  Defense counsel agreed they had, responding:  "That is part of the agreement, yes."  *Id.* at 36.  The Court also observed that, as part of the Plea Agreement, Sinclair had "waived [his] right to make an application for any kind of a departure," and asked counsel to confirm that the defense was "suggest[ing] to the [Court] that a[n] … upward variance is required here."  *Id.*  Defense counsel explained that she "would've couched it as [the defense] … ask[ing] for the minimum of 12 years, but yes."  *Id.*  Defense counsel also observed that, because of Sinclair's prior Section 924(c) conviction, "[a]s the Government discussed, a plea to a second gun offense is 25 years," *id.* at 47, and that, in such circumstances, there is commonly "some sort of negotiation, which is what happened in this case, obviously," *id.*  As a result, consistent with the Plea Agreement, defense counsel told the Court that the defense "endorse[d] Probation's recommendation of … 144 months" on Count One.  *Id.* at 37.

After hearing from the parties, the Court imposed sentence.  In so doing, the Court made perfectly clear that it had conducted an independent evaluation of the Section 3553(a) factors, observing that while the parties had agreed to seek a sentence in the range of 12 to 15 years'

---

[1]  During the proceedings, the Court also sentenced Sinclair to a term of 60 months' imprisonment for his violation of supervised release, to run consecutive to its sentence on the Hobbs Act count. Sent. Tr. at 65-66.  That sentence is not at issue in this motion.  *See* Dkt. 85.

imprisonment, that agreement was "not binding on" the Court. Sent. Tr. at 57-58. As to the merits, the Court explained that it viewed Sinclair's "criminal conduct," which included discharging a firearm in furtherance of a robbery, to be "unbelievably serious." *Id.* at 35-36, 55, 57. The Court also considered that the Government had elected to forego charging Sinclair with a violation of Section 924(c), which the Court observed could form the basis for an upward departure under the policy statement in Section 5K2.21. *Id.* Ultimately, seeing no practical difference between a departure and a variance, the Court chose to vary upward "based on [its] analysis of the 3553(a) factors." *Id.* at 59. In selecting its sentence, the Court considered the various mitigators that Sinclair had presented, *id.* at 59-60, as well as various aggravators, including that this was Sinclair's "second federal conviction" and that his prior offenses included serious crimes, such as "robbery, brandishing firearms, carjacking, narcotics distribution, fraud, visa fraud, counterfeiting, possessing contraband in prison, [and] failure to appear," *id.* at 60-61. The Court further found that Sinclair's "criminal history score … understate[d] the severity of [his] criminal history and the likelihood that he will commit further violent crimes," making "an upward variance … extremely appropriate." *Id.* at 62. In addition, in view of Sinclair's decision to commit this offense while "on supervised release for less than four months," the Court considered the need to "promote … respect for the law," *id.* at 62-63, and, given his "criminal history and the nature of [his] conduct," the need to ensure "adequate deterrence" and "to protect the public," *id.* at 63. After weighing these and all other Section 3553(a) factors, the Court elected to vary upwards and sentenced Sinclair to 144 months' imprisonment on Count One. *Id.* at 64-65.

## ARGUMENT

In his motion, Sinclair challenges this Court's 144-month sentence on his Hobbs Act conviction—the very bottom of the sentencing range that the parties agreed in the Plea Agreement to seek—on four grounds. Specifically, Sinclair argues that (1) Hobbs Act robbery is not a crime of violence, (2) the Court erred in imposing an upward variance, (3) he was improperly sentenced as a career offender, and (4) his lawyer was ineffective. *See* Dkt. 85 ("Mot."). Sinclair is barred from raising the first three claims by virtue of the collateral attack waiver in his Plea Agreement and because he failed to raise those claims on direct appeal, and in any event none of Sinclair's claims has merit.

## I.   Sinclair's Claims That the Court Erred at Sentencing Are Barred and Meritless

### A.  Applicable Law

#### 1.  Waiver

The Second Circuit has repeatedly held that waivers of the right to challenge one's sentence are typically valid and enforceable. *See United States v. Borden*, 16 F.4th 351, 354 (2d Cir. 2021); *United States v. Coston*, 737 F.3d 235, 237 (2d Cir. 2013); *United States v. Riggi,* 649 F.3d 143, 147-48 (2d Cir. 2011). A waiver is generally enforceable if it is "knowingly, voluntarily and competently provided by the defendant." *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000). The circumstances under which courts will decline to enforce a waiver are extremely limited. *See Gomez-Perez*, 215 F.3d at 319 ("The[] exceptions to the presumption of the enforceability of a waiver … occupy a very circumscribed area of our jurisprudence."). The exceptions include situations

when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

*Id.*; *accord United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010).

Accordingly, the Second Circuit has routinely "upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." *Gomez-Perez*, 215 F.3d at 319; *see also, e.g.*, *United States v. Rosa*, 123 F.3d 94, 97 (2d Cir. 1997) ("This rule has been held to bar even those appeals which claim that the sentencing court illegally sentenced the defendant under the Guidelines and relevant statutes, so long as the court nevertheless imposed a sentence within the range outlined in the agreement."). A defendant's "waiver of his right to challenge his sentence plainly includes a waiver of his right to claim errors arising out of the District Court's crafting of [his] sentence." *Arevalo*, 628 F.3d at 97.

An appeal or collateral attack waiver is knowingly and voluntarily entered where, during the plea hearing, the defendant's attention was drawn to the waiver provision in the plea agreement and the defendant confirms his understating of the provision and his knowing intention to enter into it. *See United States v. DeJesus*, 219 F.3d 117, 121 (2d Cir. 2000) (rejecting defendant's contention that he did not knowingly waive right to appeal in plea agreement because contention was inconsistent with his statements during plea colloquy).

## 2. Section 2255 Motions

Title 28, United States Code, Section 2255 provides a mechanism to "vacate, set aside, or correct" a sentence imposed in violation of the laws or Constitution of the United States. "*Habeas* review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998). To obtain relief under Section 2255, a petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). This is a "significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

It is well-settled that Section 2255 is not a substitute for a direct appeal, *see id.* at 165, and that a federal prisoner cannot use a Section 2255 motion to litigate questions that could have been raised on direct appeal but were not, *see Rosario v. United States*, 164 F.3d 729, 731 (2d Cir. 1999). Thus, where a defendant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim may be raised under Section 2255 only if the defendant "can first demonstrate either 'cause' and 'actual prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622. Ineffective assistance of counsel claims are not subject to this procedural default rule. *See Massaro v. United States*, 538 U.S. 500, 508-09 (2003).

### B. Discussion

#### 1. Sinclair Waived or Defaulted Any Claims of Error at Sentencing

Through the Plea Agreement, Sinclair expressly waived his right to collaterally attack his 144-month sentence. Sinclair "agreed" in the Plea Agreement that he would "not ... bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 ... of any sentence within or below the Stipulated Sentence Range of 12 to 15 years' imprisonment." Plea Agm't at 4-5. It is undisputed that Sinclair was sentenced within the Stipulated Sentencing Range of 12 to 15 years' imprisonment—indeed, he was sentenced at the bottom of that range. The waiver provision of the Plea Agreement thus plainly applies and bars all his claims for relief other than for ineffective assistance of counsel (discussed below).[2]

The record makes clear that Sinclair's waiver of his right to collaterally attack his sentence was knowing and voluntary. During the change-of-plea proceeding, Sinclair confirmed that he had read the Plea Agreement and had discussed it with his attorney. Plea Tr. at 22-23. The Court specifically confirmed that Sinclair understood both that he would not be permitted to seek a sentence below 12 years' imprisonment, and that he would not be permitted to appeal any sentence of 15 years' imprisonment or less. *Id.* at 25, 27-28. Sinclair acknowledged his understanding and proceeded with his guilty plea. *Id.* Thus, Sinclair's waiver was knowing and voluntary. *See, e.g.*, *United States v. Cook*, 722 F.3d 477, 481-82 (2d Cir. 2013) (concluding that district court colloquy during guilty plea proceeding in which defendant confirmed he understood appeal waiver and was knowingly and voluntarily agreeing to it is sufficient); *Coston*, 737 F.3d at 237 (same).

Indeed, Sinclair has not even attempted to claim that his collateral attack waiver was not knowing and voluntary. Nor could he on this record, given that the Court explained in detail the scope of the waiver and Sinclair—who was represented by counsel—said that he understood and agreed to be bound by the Plea Agreement's terms, including the collateral attack waiver specifically. *See, e.g.*, *United States v. Soler*, 289 F. Supp. 2d 210, 216 (D. Conn. 2003) ("[T]he court is permitted to rely upon the defendant's sworn statements, made in open court, that: his plea was knowing and voluntary, … he had discussed the plea with his attorney, he knew that he could not withdraw the plea, he knew that no promises had been made except those contained in the plea agreement, and he was satisfied with the advice of counsel."), *aff'd*, 124 Fed. App'x 62 (2d Cir. 2005); *United States v. Malcolm*, 432 F.2d 809, 814 (2d Cir. 1970) (rejecting claim of coerced plea resting "on nothing but … bald conclusory allegation which is refuted by the record"); *Chen v. United States*, Nos. 06-civ-7159, 02-cr-1039, 2007 WL 4358466, at *3 (S.D.N.Y. Dec. 7, 2007) (denying section 2255 motion brought for ineffective assistance of counsel because petitioner's "sworn statements directly contradict[ed] his more recent self-serving allegations"); *Hernandez-Prisonol v. United States*, Nos. 05-civ-3234, 02-cr-1082, 2005 WL 2757530, at *3 (S.D.N.Y. Oct.25, 2005) (denying section 2255 motion because petitioner's "plea allocution demonstrates that he understood ... [what] he was pleading"). Nor do any of the exceptions to the enforcement of appellate waivers apply. The Government did not breach the Plea Agreement; the Court did not base Sinclair's sentence on any impermissible factor; and the Court described the rationale for the chosen sentence at length.

---

[2]   As explained, the Plea Agreement reserved Sinclair's right to assert claims of ineffective assistance of counsel. Plea Agm't at 5.

Because the waiver is enforceable and the Court imposed a sentence of 144 months' imprisonment, within the scope of the waiver provision, Sinclair's appeal is barred by the plain language of the Plea Agreement. To consider issues beyond the enforceability of the waiver in these circumstances would undermine the plea-bargaining process, the benefits of which the Second Circuit has long recognized:

> In no circumstance ... may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

*United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993); *accord United States v. Pearson*, 570 F.3d 480, 485 (2d Cir. 2009).

That rule applies squarely to the type of purported errors Sinclair raises in his motion. The Second Circuit has repeatedly explained that a defendant's "waiver of his right to challenge his sentence plainly includes a waiver of his right to claim errors arising out of the District Court's crafting of [his] sentence." *Arevalo*, 628 F.3d at 97; *see also, e.g.*, *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995) (holding procedural challenge waived because "[i]f this waiver does not preclude a challenge to the sentence as unlawful, then the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants"); *United States v. Fernandez*, 516 F. App'x 34, 36 (2d Cir. 2013) ("Because the government did not breach the plea agreement and because [the defendant] does not assert another reason to set aside his appellate waiver, we will not consider his arguments regarding the procedural or substantive reasonableness of his sentence and dismiss his appeal."). "Because the conduct [Sinclair] challenges"—the calculation of the Guidelines and the decision to impose an upward variance— "was clearly part of the sentencing phase of [Sinclair's] case, [Sinclair's] challenge is within the scope of his [collateral attack] waiver and is foreclosed." *Arevalo*, 628 F.3d at 97.

Even if Sinclair had not waived the right to collaterally attack his sentence on the ground of sentencing error through his guilty plea (he did), he procedurally defaulted those same claims by failing to raise them on direct appeal. *See Rosario*, 164 F.3d at 731. Sinclair did not file a direct appeal at all, much less on the grounds that the Court erred at sentencing for the reasons claimed in his habeas petition. Nor has Sinclair even attempted to demonstrate cause or prejudice for the failure to raise those claims on direct appeal (where the claims would equally have been waived by virtue of his guilty plea), much less that he is actually innocent. *See Bousley*, 523 U.S. at 622. Nor could he. Accordingly, Sinclair's motion, to the extent it raises claims of sentencing error, is barred by the collateral attack waiver in the Plea Agreement or is procedurally barred.

## 2. Sinclair's Claims of Sentencing Error Are Meritless

Given that Sinclair waived, or in the alternative defaulted, his claims of sentencing-based error, the Court need not reach the merits of those claims. Should the Court address the merits, however, Sinclair's claims of sentencing error are baseless and should be rejected.

"Crime of Violence."  Sinclair first argues that "without a firearm Hobbs Act robbery is not a violence crime."  Mot. 5.  This argument is wrong and, in any event, irrelevant.

As an initial matter, the Second Circuit has recently reaffirmed, consistent with its longstanding prior precedent, that Hobbs Act robbery is, in fact, a crime of violence.  *See United States v. Barrett*, 102 F.4th 60, 81 (2d Cir. 2024), *cert. granted on different grounds*, 145 S. Ct. 1307 (2025) (holding after *Taylor* that Hobbs Act robbery is a crime of violence); *United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023) ("[N]othing in *Taylor*'s language or reasoning ... undermines this [c]ourt's settled understanding that completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A).").  This holding is consistent with the decisions of at least ten other circuits.  *See Diaz-Rodriguez v. United States*, No. 22-1109, 2023 WL 5355224, at *1 (1st Cir. Aug. 14, 2023); *United States v. Stoney*, 62 F.4th 108, 113–14 (3d Cir. 2023); *United States v. Ivey*, 60 F.4th 99, 116–17 (4th Cir. 2023); *United States v. Hill*, 63 F.4th 335, 363 (5th Cir. 2023); *United States v. Honeysucker*, No. 21-2614, 2023 WL 142265, at *3 n.4 (6th Cir. Jan. 10, 2023); *United States v. Worthen*, 60 F.4th 1066, 1068–71 (7th Cir. 2023); *United States v. Moore*, No. 22-1899, 2022 WL 4361998, at *1 (8th Cir. Sept. 21, 2022); *United States v. Eckford*, 77 F.4th 1228, 1232–36 (9th Cir. 2023); *United States v. Baker*, 49 F.4th 1348, 1360 (10th Cir. 2022); *United States v. Wiley*, 78 F.4th 1355, 1364–65 (11th Cir. 2023).  Any argument by Sinclair to the contrary thus runs headlong into the governing law of this Circuit.

Equally important, whether Hobbs Act robbery is a "crime of violence" is not relevant to Sinclair's sentence.  Sinclair was not convicted of any crime (such as a violation of Section 924(c)) predicated on Hobbs Act robbery being a "crime of violence."  Nor was he subject to any additional criminal penalties or enhancements for being convicted of a "crime of violence."  To the contrary, Sinclair pled guilty to and was convicted of only Hobbs Act robbery.  And whether, in the abstract, that offense qualifies as a "crime of violence" is simply irrelevant to the validity of his sentence.[3]

"Upward Variance."  Sinclair next contends that the Court erred in varying upwards and sentencing him to 144 months' imprisonment—the sentence that the defense itself *requested* at his sentencing.  *See* Mot. at 6-8.  The argument is baseless.

As the Second Circuit has observed, "in the great majority of cases, a range of sentences—frequently extending well beyond the narrow ranges prescribed by the Guidelines—must be considered reasonable."  *United States v. Jones*, 531 F.3d 163, 174 (2d Cir. 2008).  For precisely this reason, the Circuit has routinely affirmed as reasonable sentences that reflect significant upward variances from the Guidelines range, particularly where, as here, district courts make detailed findings as to the bases for their upward variances.  *See, e.g.*, *United States v. Tunstall*, No. 23-6850, 2024 WL 4615734, at *1 (2d Cir. Oct. 30, 2024) (affirming upward variance on Count One from Guidelines range of 92 to 115 months' imprisonment to statutory maximum of 240 months' imprisonment); *United States v. Jordan*, No. 23-6163-CR, 2024 WL 2764399, at *1 (2d Cir. May 30, 2024) (affirming sentence of more than twice the high end of the Guidelines range for Mann Act violation); *United States v. Richards*, No. 22-2378-CR, 2023 WL 8613580, at

---

[3]  To the extent that Sinclair is arguing that he should not have agreed to the plea agreement because the Government *could not* have brought a Section 924(c) charge against him predicated on the Hobbs Act robbery he committed, his claim runs directly into the Second Circuit precedent cited above.  *See, e.g.*, *Barrett*, 102 F.4th at 81.

*3 (2d Cir. Dec. 13, 2023) (rejecting claim of procedural error where "the district court considered the § 3553(a) factors and explained its reasons for the sentence it imposed, including the upward variance" to 204 months' imprisonment); *United States v. Waver*, 754 F. App'x 56, 58 (2d Cir. 2019) (affirming sentence of more than twice the high end of the Guidelines range where district court found that range understated severity of conduct and defendant's criminal history).

This Court, in sentencing Sinclair, conducted an independent assessment of the Guidelines and the Section 3553(a) factors, and it made plain why it believed the Guidelines range was inadequate. The Court highlighted, for example, that this was Sinclair's "second federal conviction" and that his prior offenses involved serious (and often dangerous) criminal conduct, including "robbery, brandishing firearms, carjacking, narcotics distribution, fraud, visa fraud, counterfeiting, possessing contraband in prison, [and] failure to appear." Sent. Tr. at 60-61. Given his record, the Court appropriately found that Sinclair's "criminal history score ... understate[d] the severity of [his] criminal history and the likelihood that he will commit further violent crimes," making "an upward variance," in the Court's view, "extremely appropriate." *Id.* at 62. The Court also observed that Sinclair committed this offense—which itself was a violent robbery during which he discharged a firearm—while "on supervised release for less than four months." *Id.* at 62-63. Given Sinclair's near-immediate return to serious criminal activity, the Court emphasized the need for a significant sentence to ensure "adequate deterrence" and "to protect the public" from future misconduct. *Id.* at 63. In view of these and other considerations, the Court concluded that a sentence of 144 months' imprisonment was appropriate. *Id.* at 64-65.

In this case, moreover, the Court not only made a detailed record of the basis for its upward variance—it imposed the sentence that Sinclair, through his counsel, *himself* requested. Sent. Tr. at 37 (explaining that the defense "endorse[d] Probation's recommendation of ... 144 months"). And as set forth above, the record is clear that Sinclair requested this sentence because, in the absence of a plea, he faced a substantially *higher* sentence that included a mandatory minimum consecutive sentence of 25 years' imprisonment—more than twice the sentence that the Court imposed on Count One. As the Court recognized at sentencing, the policy statement in Section 5K2.21 of the Guidelines permitted the Court to depart upwards based on Sinclair's potential exposure on this uncharged count. Sent. Tr. at 58. Given this directive, it was certainly reasonable for the Court to consider, in imposing an upward variance, that Congress chose to impose a mandatory minimum sentence of 25 years' imprisonment for offenders like Sinclair who continue to possess firearms in furtherance of violence or drug trafficking even after sustaining prior convictions for such conduct. And while the Court varied upwards from the Guidelines range, as the parties suggested, it is also relevant that the sentence it imposed was still less than half of the mandatory minimum sentence that Sinclair faced for a subsequent Section 924(c) violation.

In short, this Court's sentence, which was in line with the sentence requested by Sinclair, was eminently reasonable and fully supported by the record.

"Career Offender." Sinclair next contends, citing nothing, that the Government impermissibly used his past conduct to argue that he should be sentenced as a "career offender." Mot. at 8-9. The claim is frivolous. The parties did not use the "career offender" Guidelines in the Plea Agreement, the term "career offender" did not appear in the Government's sentencing memorandum, and no party argued that Sinclair was, or should be treated as, a "career offender" at sentencing. *See generally* Plea Agm't; Gov't Sent. Subm. (Sept. 16, 2024); Sent. Tr. at 2-74. Nor did the Probation Office or the Court reference "career offender" in calculating the applicable

Guidelines range. There is, in short, no basis for Sinclair's claim that he was sentenced as a "career offender."

To the contrary, as set forth above, in view of Sinclair's prior Section 924(c) convictions, the parties negotiated a resolution that permitted him to *avoid* certain consequences of his criminal history—specifically, the mandatory minimum 25-year sentence that he faced due to his prior convictions for violation of Section 924(c). In exchange for the Government's agreement to accept a resolution that did not include this charge, Sinclair agreed, in the Plea Agreement, to seek a sentence within the range of 12 to 15 years' imprisonment—an agreement that is wholly unrelated to the "career offender" Guidelines. After conducting its own weighing of the Section 3553(a) factors, and without so much as mentioning the term "career offender," this Court concluded that an upward variance was appropriate and sentenced Sinclair to 144 months' imprisonment on the Hobbs Act robbery count—the bottom of the range negotiated by the parties and the sentence that both Sinclair and Probation asked the Court to impose. *See* Sent. Tr. at 37 (endorsing "Probation's recommendation of the 144 months on the Indictment as sufficient but not greater than necessary"). Sinclair's contention that he was somehow treated as a "career offender" is thus meritless.

## II. Sinclair's Ineffective Assistance of Counsel Claim Is Meritless

### A. Applicable Law

A defendant claiming ineffective assistance of counsel must (1) show that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice" from counsel's allegedly defective performance. *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984). An ineffective-assistance claim fails unless the defendant carries his "heavy burden" of establishing both prongs. *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004).

To show that counsel's performance was deficient, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In evaluating counsel's performance under the first prong of *Strickland*, a reviewing "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990). "[E]very effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective *at the time*." *Strickland*, 466 U.S. at 689 (emphasis added). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). A defendant cannot establish prejudice by showing merely that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have

influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693.

## B.  Discussion

Sinclair argues that his counsel was ineffective in failing "to challenge or raise[] any issues pertaining [to] the government['s] cruel and unusual[] punishment and allowing [him] to sign a plea deal that never was in [his] best interest." Mot. at 9-10.  He complains that counsel was not aware of how specifically the Government formulated its offer of a plea in which the parties asked for a sentence within the range of 12 to 15 years' imprisonment, and that his counsel erred in failing to object to a purported "breach of contract" by the Government in seeking an "upward departure," which "both parties agree[d] not to do." *Id.*  These claims are groundless.

As an initial matter, nowhere in his motion does Sinclair acknowledge the reality of the exposure that he was facing—a 25-year, mandatory minimum, consecutive sentence.  As reflected in both the complaint filed in the case and the Government's various submissions, the strength of the evidence against Sinclair was overwhelming.  *See* Dkt. 1.  He was captured on video committing a gunpoint robbery of Victims 1 and 2, and he can be seen discharging a firearm in the air in connection with that robbery.  The gun and business proceeds Sinclair and his co-conspirators stole were recovered.  And Sinclair gave a *Mirandized*, videotaped confession of his crimes.  Given his conduct, and the strength of the evidence against him, Sinclair's exposure, had he proceeded to trial, was substantially above the exposure he faced under the Plea Agreement.  Indeed, the mandatory *minimum* sentence for Sinclair's violation of Section 924(c) (25 years) exceeded the statutory *maximum* sentence that he faced under the Plea Agreement for the Hobbs Act violation (20 years).  The parties agreed to request a sentence in the range of 12 to 15 years on this count, a reduction of 10 to 13 years from the mandatory minimum he faced.  And he ultimately received a sentence of 12 years, less than *half* of the mandatory sentence he would have faced had he been convicted of yet another violation of Section 924(c).

Given this reality, Sinclair cannot satisfy either prong of the *Strickland* standard.  Sinclair cannot plausibly claim that his counsel's performance was deficient in any way, much less "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. at 687, given that defense counsel secured a favorable resolution of Sinclair's case, in which the Government did not proceed with a charge that carried a significant 25-year mandatory minimum sentence, in favor of a negotiated resolution that capped his exposure at 20 years' imprisonment, with no mandatory minimum. Indeed, Sinclair fails to identify any specific errors defense counsel made or steps she should have taken but failed to take.  Accordingly, Sinclair has not—and cannot—overcome the strong presumption that his counsel's conduct "falls within the wide range of reasonable professional assistance." *Id.* at 689.

Nor can Sinclair show prejudice—*i.e.*, a "reasonable probability" that, but for counsel's supposed error, "he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130.  To the contrary, without the plea deal counsel negotiated on Sinclair's behalf, the Court would have been obligated to impose a significantly higher sentence of at least 25 years' imprisonment—more than double the sentence Sinclair received.  Indeed, even now, Sinclair does not seek to undo his guilty plea, which would expose him to prosecution for violation of Section 924(c).  That failure to seek recission of his guilty plea is fatal to his claim.  To the extent that the defendant is claiming

that his counsel was ineffective in permitting him to plead guilty or that the plea agreement was breached, the proper remedy would not be resentencing; it would be vacating of the plea agreement. *See, e.g.*, *United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004) (explaining that a defendant who claims breach of a plea agreement generally "is entitled to either withdraw his plea or have his agreement specifically performed"). Were that to occur, Sinclair could then be prosecuted for both the Hobbs Act violation and attendant violation of Section 924(c), carrying a concomitant 25-year mandatory minimum consecutive sentence. Sinclair cannot maintain the benefits of the plea agreement, including avoiding a mandatory minimum consecutive sentence of 25 years, while picking and choosing which of its provisions to enforce.

### III. The Court Should Deny Sinclair's Petition Without an Evidentiary Hearing

Sinclair fails to submit any sworn affidavits in support of his motion and makes only conclusory allegations with respect to the supposed defects in his sentencing proceeding. The Government respectfully submits that no further factual development is warranted and that the Court should not conduct an evidentiary hearing, as Sinclair's claims (to the extent not waived or defaulted) should be denied in their entirety. *See* Rules Governing Section 2255 Proceedings, Rule 8. The Second Circuit has recognized that in habeas cases "'allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.'" *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). In *Chang*, the defendant submitted a "highly self-serving" affidavit in which he claimed that defense counsel prevented him from testifying at trial. *Chang*, 250 F.3d at 81, 86. The district court, having received an affidavit from defense counsel contradicting Chang's claim, denied the petition without conducting a hearing. *Id*. at 81. On appeal, the Second Circuit concluded that the district court's decision was well within its discretion:

> It was, therefore, within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a testimonial hearing. The district court reasonably decided that the testimony of Chang and his trial counsel would add little or nothing to the written submissions.

*Id*. at 86. In *Campusano v. United States*, the Second Circuit relied on *Chang* to hold that "the district court has discretion to determine if a testimonial hearing will be conducted" or if something short of a full hearing will serve to resolve a factual dispute arising in the context of a habeas proceeding. *Campusano*, 442 F.3d 770, 776 (2d Cir. 2006) (citing *Chang*, 250 F.3d at 85); *accord Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) ("[A] district court need not assume the credibility of factual assertions [in a habeas petition], as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding."). The record currently before the Court is more than sufficient to deny Sinclair's claims because none of them rise to the level of a constitutional violation, even if proved, and a hearing or affidavit from defense counsel is not needed as a result.

**CONCLUSION**

For the reasons set forth above, Sinclair's motion, to the extent it raises claims of sentencing error, is barred, and in any event all the claims raised in his motion are meritless.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:  _____/s/_____
Benjamin Klein / Stephanie Simon
Assistant United States Attorneys
Tel: (914) 993-1908 / (212) 637-2581